IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

J&J SPORTS PRODUCTIONS, INC.,          §
as Broadcast Licensee of the May 5, 2012   §
Floyd Mayweather, Jr. v. Miguel Cotto Event,  §
                                       §
            Plaintiff,                 §
                                       §
V.                                     §          1-15-CV-361  RP
                                       §
CHUCHO'S MEXICAN RESTAURANT, INC.,     §
individually, and d/b/a CHUCHO'S MEXICAN  §
RESTAURANT a/k/a CHUCHO'S MEXICAN      §
RESTAURANT STE 208; JESUS S.           §
ESTRADA, individually, and d/b/a CHUCHO'S  §
MEXICAN RESTAURANT a/k/a CHUCHO'S      §
MEXICAN RESTAURANT STE 208; AND        §
CECELIA P. ESTRADA, individually, and  §
d/b/a CHUCHO'S MEXICAN RESTAURANT      §
a/k/a CHUCHO'S MEXICAN RESTAURANT      §
STE 208,                               §
                                       §
            Defendants.                §

## <u>ORDER</u>

Before the Court is Plaintiff's Motion for Final Default Judgment and Brief in Support, filed September 11, 2015 (Clerk's Dkt. #9).  After reviewing the pleadings, relevant case law, as well as the entire case file, the Court issues the following order.

## I.  BACKGROUND

On May 4, 2015 Plaintiff J&J Sports Productions, Inc. filed this action naming as defendants Chucho's Mexican Restaurant, Inc. d/b/a Chucho's Mexican Restaurant, Jesus S. Estrada and Cecelia P. Estrada.  Plaintiff states it was exclusively authorized to sub-license the closed circuit telecast of a boxing event on May 5, 2012 (the "Event").  Plaintiff alleges Defendants did not contract with it to receive the telecast, but willfully intercepted or received the interstate communication of the Event and provided it for viewing at their restaurant.  (Plf. Orig. Compl. ¶¶ 7-17).  Plaintiff alleges Defendants' conduct constituted a violation of the Federal Communication

Act ("FCA"), specifically 47 U.S.C. §§ 553 and 605.  By way of the complaint, Plaintiff requests statutory damages and  injunctive relief, as well as attorneys' fees and costs.

Plaintiff has now filed a motion requesting entry of default judgment based on Defendants' failure to file a response or otherwise defend.

## II.  LEGAL STANDARD

A defendant's default "does not in itself warrant the court entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered. . . .  The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.  In short, . . . a default is not treated as an absolute confession of the defendant of his liability and of the plaintiff's right to recover."  *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also* 10A Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE § 3688 at 63 ("Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.").

## III.  DISCUSSION

Under the FCA, a person is prohibited from "intercept[ing] any radio communication . . . or receiv[ing] or assist[ing] in receiving any interstate or foreign communication by radio and us[ing] such communication . . . for his own benefit or for the benefit of another not entitled thereto."  47 U.S.C. § 605(a).   The FCA also prohibits a person from "intercept[ing] or receiv[ing] or assist[ing] in intercepting or receiving any communications service offered over a cable system" without authorization.  *Id*. § 553(a)(1).  The first section imposes liability for interception or receipt of wireless communications, the second for communications received by wire.  *J&J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.*, 751 F.3d 346, 348 (5th Cir. 2014).  Because Plaintiff has alleged Defendants intercepted or received communications over a satellite system and has not

alleged receipt over a cable or wire-based system, Plaintiff may only seek relief under section 605. *See J & J Sports Prods., Inc. v. Rivera*, 2015 WL 1137473, at *3 (W.D. Tex. Mar. 12, 2015) (lacking allegations of receipt by cable, Plaintiff could not seek relief under section 553). *See also Entertainment by J & J, Inc. v. Al-Waha Enters., Inc.*, 219 F. Supp. 2d 769, 775 (S.D. Tex. 2002) ("Recovery generally is not available under both provisions.").

Here, Plaintiff alleges the Event was transmitted via an "electronically coded or 'scrambled'" satellite signal and that establishments which contracted with Plaintiff to broadcast the Event were provided with the capability for receiving and decoding the signal. (Plf. Orig. Compl. ¶¶ 10-12). Plaintiff further alleges Defendants "willfully intercepted or received the interstate communication of the Event," or, alternatively, "assisted in the receipt of the interstate communication of the Event." (*Id*. ¶ 13). According to Plaintiff, "Defendants then transmitted, divulged and published [the Event] . . . to patrons within [their establishment] . . . willfully and with the express purpose and intent to secure a commercial advantage and private financial gain." (*Id*. ¶¶ 13-14).

By virtue of its default, Defendant has admitted to the truth of these allegations. Therefore, the Court finds Plaintiff has established a cause of action under the FCA. *See Joe Hand Promotions, Inc. v. Dadson*, 2014 WL 5035300, at *2 (S.D. Tex. Oct. 8, 2014) (to establish liability under the FCA, plaintiff need only show limited access satellite broadcast was exhibited in defendants' establishment and plaintiff did not authorize the exhibition of the broadcast); *Kingvision Pay-Per-View, Ltd. v. Guerrero*, 2009 WL 1973285, at *2 (N.D. Tex. July 7, 2009) (undisputed evidence showing defendant intercepted and exhibited protected communications without authorization established liability under the FCA).

The Court next turns to the question of relief. As a general rule, courts may enter a default judgment awarding damages without a hearing only if the amount of damages is a liquidated sum, an amount capable of mathematical calculation, or an amount demonstrated by detailed affidavits. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993); *United Artists Corp. v. Freeman,* 605 F.2d 854,

857 (5th Cir. 1979).  It is a matter within the court's discretion whether to hold a hearing before awarding damages in a default judgment.  *See* FED. R. CIV. P. 55(b)(2) (in determining amount of damages entered in default, court may conduct such hearings or order such references to determine amount of damages "as it deems necessary and proper"); *James*, 6 F.3d at 310 (district court has wide latitude in deciding whether to require evidentiary hearing before entering default judgment).  Here, Plaintiff has not requested a hearing and has moved only for statutory, and not actual, damages.  Accordingly, the Court finds a hearing is not necessary to calculate damages.

## A.    Statutory Damages

Statutory damages call for an award of "not less than $1,000 or more than $10,000, as the court considers just."  47 U.S.C. § 605(e)(3)(C)(i)(II).  If the court finds a defendant violated the statute "willfully and for purposes of direct or indirect commercial advantage or private financial gain," it may increase the damage award by up to $100,000, at its discretion.  *Id.* § 605(e)(3)(C)(ii).  In addition, "an aggrieved party who prevails" receives full costs, including reasonable attorney's fees.  *Id.* § 605(e)(3)(B)(iii).

Plaintiff contends that "it would be impossible to determine the full extent of the profits lost and . . . additional damages sustained" as a result of Defendants' actions.  (Plf. Mot. for Default ¶ 7).  Plaintiff thus requests statutory, rather than actual, damages in the amount of the statutory maximum of $10,000.  Courts have assessed a broad range of statutory damages when presented with violations akin to that of Defendants.  *See J&J Sports Prods., Inc. v. Zeqiri*, 2015 WL 5916693, at *4 (N.D. Tex. Oct. 7, 2015) (granting award of $5,000 in statutory damages); *Rivera*, 2015 WL 1137473, at *5 (granting statutory damage award of $2,300); *J & J Sports Prods., Inc. v. Little Napoli, Inc.*, 2014 WL 3667903, at *3 (S.D. Tex. July 22, 2014) (finding statutory maximum of $10,000 appropriate); *Joe Hand Promotions, Inc. v. Armijo*, 2014 WL 1761709, at *3 (W.D. Tex. May 1, 2014) (award of $3,600.00 in statutory damages); *J & J Sports Prods., Inc. v. Casita*

4

*Guanajuato, Inc.*, 2014 WL 1092177, at *2 (W.D. Tex. Mar. 19, 2014) (finding $10,000.00 is a just amount in statutory damages).

In support of the request for damages Plaintiff proffers the affidavit of its counsel Thomas P. Riley ("Riley").  (Plf. Mot. for Default Ex. A  ("Riley Aff.").  According to Riley, Plaintiff's business is damaged in several way when proprietors such as Defendants broadcast sports events without obtaining a required license.  First, Plaintiff loses the revenue from the fee it charges for a license. (*Id*. ¶ 13).  Riley further explains that establishments that lawfully broadcast programs lose business and patrons because they must charge patrons more than those establishments which do not pay for the required license.  They are thus less likely or able to obtain licenses in the future. (*Id*. ¶ 12).  Finally, Plaintiff's goodwill is impaired because its credibility in marketing that access to the broadcast is limited to licensees is damaged. (*Id*. ¶ 14).

Plaintiff here presents evidence that Defendants would have faced a sublicensing fee of approximately $2,200 had they actually paid to lawfully broadcast the Event.  (Riley Aff. Ex. A-2 at 2) (capacity of Defendant's restaurant is approximately seventy people); Ex. A–3 (rate for establishment with "0–100 minimum seating" is $2,200)).  Courts have made clear that simply awarding damages in the amount a defendant would have been charged for a sub-license is insufficient as it would have no deterrent effect.  *See Joe Hand Promotions, Inc. v. RLPR Mgmt., LLC*, 2015 WL 539649, at *5 (W.D. La. Feb. 6, 2015) (noting one purpose of statutory award of damages is to deter conduct, awarding twice license fee in damages); *Joe Hand Promotions, Inc. v. Plummer*, 2014 WL 3749148, at *2 (N.D. Miss. July 29, 2014) (same, awarding three times license fee as damages); *Little Napoli, Inc.*, 2014 WL 3667903, at *3 (awarding one and one-half times license fee as statutory damages); *Al–Waha Enters.*, 219 F. Supp. 2d 769, 776 (S.D. Tex. 2002) ("Merely requiring Al–Waha to pay the price it would have been charged to obtain legal authorization to display the event does nothing to accomplish this object [to deter future violations of the FCA].").  To determine the amount of statutory damages, this Court agrees with other courts

5

that a reasonable award is treble what would have been the cost had Defendants followed the law. *See G & G Closed Circuit Events LLC v. Rivals Sports Grill LLC*, 2014 WL 198159, at *4 (W.D. La. Jan. 14, 2014); *J & J Sports Prods., Inc. v. Rodriguez*, 2013 WL 3967833, at *2 (W.D. Tex. July 31, 2013); *Joe Hand Promotions, Inc. v. Garcia*, 546 F. Supp. 2d 383, 386 (W.D. Tex. 2008). Accordingly, the Court grants Plaintiff's request for statutory damages and awards it $6,600.

**B.    Additional Damages**

Plaintiff also seeks an award of $50,000 in "additional" damages.  Under the FCA,  where the court finds a violation was "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain" the court may increase the award of damages by an amount up to $100,000.  47 U.S.C. § 605(e)(3)(C)(ii).

Plaintiff maintains Defendants acted "willfully" as they could not have "innocently" accessed the broadcast of the Event because the satellite signal was coded and required specialized equipment to receive and decode the signal.  (Plf. Orig. Compl. ¶¶ 10-12; Riley Aff. ¶ 6).  Courts have generally found this reasoning persuasive.  *See J & J Sports Prods., Inc. v. Torres*, 2015 WL 4643191, at *5 (N.D. Tex. Aug. 5, 2015) (finding willfulness given limited means by which defendants can access pay-per-view events and unlikelihood that an establishment could intercept such broadcasts by chance); *Rivera*, 2015 WL 1137473, at *5 ("It is highly unlikely that Defendant accidentally intercepted the transmission of the Event, since the transmission was electronically coded"); *Al–Waha Enters.*, 219 F. Supp. 2d at 777 (finding willfulness given the "limited methods of intercepting closed circuit broadcasting of pay-per-view events" and "the low probability that a commercial establishment could intercept such a broadcast merely by chance"); *Garcia,* 546 F. Supp. 2d at 385 (quoting *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.")).  Based on this line of cases, the Court likewise

6

concludes Plaintiff has made a sufficient showing of willfulness.

Plaintiff has also presented evidence which establishes Defendants exhibited the Event for either direct or indirect commercial gain, as there were approximately twenty-six patrons in their restaurant at the time the Event was shown.  (Plf. Mot. for Default Ex. A-2).  Plaintiff maintains the fact that Defendants showed the Event to its patrons, while offering alcoholic beverages for sale, shows Defendants' commercial motive.  Similar evidence has been enough for other courts to find a commercial motive.  *See J & J Sports Prods., Inc. v. Hernandez*, 2015 WL 1292832, at *5 (N.D. Tex. Mar. 20, 2015) (fact that establishment showing pirated television event and sold patrons food and beverages sufficient to show commercial motive); *Rivera*, 2015 WL 1137473, at *5 (vending food and beverages is evidence of commercial motive); *J & J Sports Prods., Inc. v. Beck*,  2013 WL 5592333, at *2 (S.D. Tex. Oct. 9, 2013) (finding commercial motive based on fact that "patrons purchased food and/or drinks while viewing the Event" and because "it is obvious that commercial establishments show sports programs to draw business, not out of charity").  This Court agrees.

Having found willfulness and commercial motive, the Court turns to the question of the appropriate amount of damages to award.  As noted above, the Court has discretion to increase the award of damages up to $100,000.  Courts have exercised this discretion in a variety of ways. *See, e.g., Joe Hand Promotions, Inc. v. Alima*, 2014 WL 1632158, at *5 (N.D. Tex. Apr. 22, 2014) (awarding four times the statutory base award as additional damages where defendant charged cover and showed event on nine screens to approximately 85 to 125 patrons); *J & J Sports Prods., Inc. v. Q Café, Inc.*, 2012 WL 215282, at *5 (N.D. Tex. Jan. 25, 2012) (awarding five times statutory base award where defendant broadcast event in urban area and court noted the importance of deterring future violations); *Beck*, 2013 WL 5592333, at *3 (awarding three times base because defendant did not charge cover, only thirty patrons viewed event, and defendant was not repeat offender); *Kingvision Pay–Per–View, Ltd. v. Scott E's Pub, Inc.*, 146 F. Supp. 2d 955, 960 (E.D. Wis. 2001) (awarding five times base statutory amount because defendant advertised event,

charged cover, and showed event on five television monitors).

Plaintiff suggests the appropriate award is an amount five times the grant of statutory damages.  A quintupling of damages is at the high end of the spectrum of damages awarded in other cases.  The Court finds the evidence presented by Plaintiff falls short of meriting such damages.  Specifically, Plaintiff has provided evidence that an investigator observed the Event being shown on only a single television in Defendants' restaurant.  Moreover, there is no evidence that Defendants charged a cover to watch the Event, or that they advertised their showing of the Event to attract a greater audience.  (Plf. Mot. for Default Jt. Ex. A-2).  Thus, based on the damages awarded by other courts, the evidence currently before this Court, and the need to deter future violations, the Court finds that an additional damages award of $2,200 is reasonable.  *See Zeqiri*, 2015 WL 5916693, at *5 (award of $1,000 in additional damages where no evidence was presented as to number of televisions showing event and only five people were present); *Rivera*, 2015 WL 1137473, at *6 (awarding additional damages in amount of fee to broadcast event).

## C.      Attorney's Fees and Costs

Under the FCA, the Court is required to order the recovery of full costs, including attorney's fees, to an aggrieved party who prevails. 47 U.S.C. § 605(e)(3)(B)(iii).  Plaintiff here requests an award of a one-third contingent fee or, alternatively, $1,000 worth of attorney's fees.  In support of the request Plaintiff presents an affidavit from its counsel, David M. Diaz ("Diaz"), who estimates his fee as $1,000, based on approximately four hours of work a rate of $250 per hour.  (Plf. Mot. for Default Ex. B ("Diaz Aff.").

The determination of a fees award is a two-step process. *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). First, a court calculates a "lodestar" figure "by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work." *Id*.  In making that calculation the court considers whether the attorneys demonstrated

8

proper billing judgment by "writing off unproductive, excessive, or redundant hours." *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996).  After calculating the lodestar, the court may increase or decrease it based on a number of factors including the time, labor and skill required, the novelty and difficulty of the issues, the amount involved and results obtained, as well as the award in similar cases.  *Heidtman*, 171 F.3d at 1043.

In his affidavit Diaz states the attorneys representing Plaintiff have expended a minimum of four hours on this litigation.  Diaz also details his experience and provides evidence of the fees charged by other attorneys in similar cases.  (Diaz Aff. ¶¶ 9-11).  Accordingly, the Court finds no adjustment to Diaz's figures is necessary and finds an award of $1,000 in attorney's fees is appropriate.  Pursuant to the FCA, the Court also awards Plaintiff such other reasonable costs as it has incurred.

## D.    Injunction

In its summary conclusion, Plaintiff also request a permanent injunction against Defendants enjoining them "from ever intercepting or exhibiting an unauthorized program in violation of the [FCA]."  (Plf. Mot. for Default at 10).  A court may grant a final injunction "on such terms as it may deem reasonable to prevent or restrain violations" of the FCA.  47 U.S.C. § 605(e)(3)(B)(i).  In this case, however, Plaintiff simply asserts a request for an injunction, without proffering any justification as to why such relief is warranted.  Accordingly, the Court finds Plaintiff has failed to show an injunction is necessary to prevent or restrain Defendants from violating the FCA.  The Court therefore denies Plaintiff's request for a permanent injunction.

## IV. CONCLUSION

The Court hereby **GRANTS in PART** and **DENIES in PART** Plaintiff's Motion for Final Default Judgment (Clerk's Dkt. #9).  Specifically, Defendants shall pay Plaintiff:

(1) $6,600.00 in statutory damages pursuant to 47 U .S.C. § 605(e)(3)(C)(i)(II); plus

(2) $2,200.00 in additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii); plus

(3) $1,000.00 in reasonable attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii); plus

(4) costs in an amount to be determined pursuant to the procedure specified in W.D. Tex. Local Court Rule CV–54.

IT IS FURTHER ORDERED that Defendants shall pay post-judgment interest, to be calculated and compounded pursuant to 28 U.S.C. § 1961, until paid in full.

All other relief not granted herein is DENIED.

**SIGNED** on November 18, 2015.

ROBERT L. PITMAN
UNITED STATES DISTRICT JUDGE